May it please the court, my name is Mark Moisure, I'm here on behalf of Michelle Gilstrap and I would like to reserve three minutes of my time for rebuttal. We are here today because United Airlines thinks that it is not accountable to an individual for their negligence. They have argued that they can discriminate against people with disability and that they are not accountable under state tort remedies. And this flies in the face of the laws of our nation, our constitution. The FAA was revised in 1994 under the Clinton administration. It wasn't a major change but there were several new codifications to the law. A part of that FAA revamp was one statute which we refer to as the ACAA. And the question comes down... What do you call it? ACAA? ACAA? Yeah. Air Carrier... No, I'm just... ACAA. Okay. There's been a significant amount of litigation over the ACAA. Can I just ask a question? The private right of action issue is not in this case? This is not a private right of... No, we did not plead it. So you're looking right now just at state tort remedies? That is correct. Okay, so you're not trying to do this directly? No, I think Alexander v. Sandoval by the Supreme Court made that very clear, which is why we did not bring a private right of action. We are following more in line with the LSAD case of the Third Circuit, which says you can bring negligence causes of action under the ACAA. This is a state tort cause of action for negligence. And under negligence you have to prove duty. And how do you prove the duty? We show the duty that was owed is laid out in the... ACAA. ACAA, that is correct. The FAA revisions that took place on July 5, 1994, in that whole entire section, if you look at 49 U.S.C. 40120, it clearly states a remedy under this part, referring to the whole FAA, is in addition to any other remedy provided by law. What are the other remedies? Your understanding is that does apply to the ACAA? That is our interpretation. And if you look at 49 U.S.C. 41112, which is also part of the FAA, this court in the Martin case basically said because the FAA says that airlines are supposed to carry insurance to ensure bodily injury, the FAA intended that the state tort causes of action were applicable. This is nothing more than a state cause, not state cause of action, but this is a state tort claim of negligence. What about, I assume you would agree that the, or do you agree, that the standards laid out in the extensive regulations under the ACAA are preemptive, i.e. at least preemptive of anything to the contrary and probably feel preemptive as well. I'm sorry, I missed the first part of your question. They're at least preemptive of any state rule to the contrary, i.e. if the state had a rule that said, if the federal regulation said it's okay to do it this way in the state, you couldn't plead negligence saying it's not okay to do it that way. I would agree 100%. So you're, again, just to be sure I understand your argument, your argument is that under a state tort claim, the duty, which under California law has to be demonstrated to succeed on a tort claim, is the duty established by the ACAA, but once you show a violation of the standards in the ACAA, your theory is that you can look to state law for the remedy for that violation of duty. Is that a fair summary? I believe so. This is what happens in automobile accidents all the time. There is a statute, a vehicle code. There is no private cause of action for somebody who violates California vehicle code. As a plaintiff's attorney, I have a duty to plead that there was a violation of this duty to the statute.  I still have to prove that it was causation, and I still have to prove damages. Well, you also have to prove that it's negligence under California law, which isn't totally obvious to me, but isn't really our problem right now. In other words, California could take the position that the whole of the affirmative obligations set by the statute do not establish negligence, are not standards for the exercise of negligence. The notion that you have to have a wheelchair for somebody affirmatively, I assume California could decide, well, we don't regard just applying common law negligence. The affirmative obligation to provide a wheelchair is not necessarily what a reasonable person would have to do absent some affirmative federal obligation. But we're not there yet. We're not there yet. But I would agree that we can go there. So you're not saying that just because they violated the regs, that makes that a claim of California negligence law either? We plead negligence and negligence per se. But negligence per se is not. It isn't true that any time you violate a regulation, you've committed negligence per se. No, because when there's a statute or a rule or anything like that, it just shows what the duty was. Well, it shows a duty, but it doesn't necessarily show a duty that is a duty responsive to negligence. In other words, I mean, there are lots of things you have to do. You have to pay your taxes. Not paying your taxes is probably not state law negligence. So there's just not a one. You seem to be assuming there's a one-on-one correlation, and there isn't necessarily. But we're not there yet. We're not there. In this particular case, we pled negligence. United didn't. There's a whole litany of things that they didn't do on these various trips, various cities across the United States and even one up in Canada. And California down the line could say, well, even if that was required by federal regulation, it's not California negligence. They could. They could, but this is a negligence case. Duty, breach, causation, damages. And what is the duty? The duty is imposed by the ACAA. Thou shall provide a wheelchair. You have to do certain things. That is what the duty is. United owed a duty to Michelle Gilstrap, a disabled American, who simply was injured as a result of them failing to produce a wheelchair at the required times, at the required places. Because they violated that duty, because there was a breach of that duty, a duty that was imposed by the ACAA, Michelle Gilstrap was injured. And the court blow through it. She was not in fact physically injured, right? No, she was. She was in the hospital upon return of the initial trip. For what? For stress? No. Her back pain. She had epidural shots immediately afterwards. She still is suffering as a result thereby. The thing is, this district court's opinion has been discussed by two other district courts. More importantly, the Summers Court. And the Summers Court has said that this district court got it wrong. The LSAD case is a third circuit. They said that as soon as a plane reaches the terminal building, there is no field preemption. State causes of action for negligence are there. The Summers Court has said that state causes of action are available. The Martin case, which is a ninth circuit, has said that because the FAA required insurance for bodily injury, they anticipated, Congress anticipated that there would be no preemption and that a disabled American could bring a cause of action for injuries. And unless there's no further questions, I will sit down. Well, is there anything in the contract of carriage or whatever you want to call it, a ticket you buy, or about producing a wheelchair for a disabled person? The thing is, she ordered the wheelchair. I just asked you, anything in that. I'm not aware. Did you read all that? I have seen the ticket and I don't believe there was any comment in the contract for carriage. It hasn't been an issue that's been briefed. You didn't plead a contract claim? We did not plead a contract claim. Well, a duty can arise out of contract, too. It can. I'm just asking these questions. It's a very good question. Thank you. It's a very good answer. Okay, now, this is United. This is United. And she called in advance, made known her need. Yes, when the reservation was made, the ticket indicated that she needed wheelchair access. You didn't argue at all about the ADA. Are you dropping that? No, it's there. I think the more interesting issue for this court is the ACAA. I think the ADA applying in terminals is, if you just look at the basic statutory language contained in 42 U.S.C. 12-182 and 12-181, I think the plain language of the code indicates that public accommodation is included in a terminal. The only place the ADA specifically removes itself from is the airplane itself. And all of our claims... No, it says terminals for specific transportation, and then defines specific transportation as including aircraft. So it seems to exclude an aircraft terminal. Well, there are some... To some degree. I mean, I understand that there is another group of entities there, like stores and so on, that are specifically in the statute. So they're probably in, even if they're in the terminal. But the parts of the terminal that are just for going to the airport, airplanes seem to be covered. There is different district courts that have interpreted the ADA... District courts that haven't said that seem not to have read the statute. Yeah. And my interpretation is that it excludes the airplane. It doesn't exclude the airport terminal itself. If you're saying that, why? Because of how the statute is actually worded. All right. You can tell me on rebuttal. You obviously don't think much of the argument because you didn't stand up to argument, so it's okay. You've got to read all that to us. Quickly. May it please the Court. I'm Richard Grotch on behalf of Defendant United Airlines. Just addressing very quickly the Americans with Disabilities Claim, the seventh cause of action. It was my understanding from its omission in the reply that it probably was out. I think it's clear from the statutory language, which the Court has referenced, that it does not apply to airlines with respect to their operations on aircraft or traditional airport terminals. It would apply, of course, to shops and restaurants and all those sorts of things within the airport. The other problem for the plaintiff was that the Americans with Disabilities Act, Title III, allows only for injunctive or equitable... But the airlines hold themselves out as providing wheelchairs, and they certainly have those narrow chairs to bring people into the aircraft, right? That's true, but that does not implicate the Americans with Disabilities Act. But the airlines hold themselves out as providing help to disabled people who need wheelchairs, right? Right. Yeah, they do this. And so that brings us to... They hold themselves out as doing that, so they undertake to do it. And they do that... And that's implicit when the person buys a ticket, huh? I would submit... It does, it does. Well, I would submit it does because the Air Carrier Access Act says that they will do that, and I believe the contract of carriage does say that it will comply with laws, including the Air Carrier Access Act. Okay. The problem... Well, what makes this case somewhat different from other more complicated cases that I think we could all hypothecate is that this one really relates solely to a duty that's provided by the Air Carrier Access Act. The Air Carrier Access Act says you'll provide wheelchairs, you'll provide an attendant, you'll provide them at this point, from this point to this point. Right. So what's wrong with the hypothesis that the plaintiff has set forth, which is this is a state law, state tort claim, and the compliance with the ACAA is the duty that's alleged to have been breached, and then there are other elements like causation and damages and all of that that have to go into a tort claim. But why isn't that a permissible kind of tort claim to bring? It's not permissible because the sole duty is the federal duty from the ACAA. I understand that. That was the whole point. And the ACAA, being as pervasive as it is, particularly with respect to a narrow subfield like the provision of wheelchairs... But he's not trying to interfere with... I mean, the way this case is set up, and others as well, he's not saying you should do anything different than what the federal regulations say. He's saying you should just do what the federal regulations say. Correct. So what kind of preemption is that? Well, by virtue of the remedy he's seeking, the Air Carrier Access Act says provides for a very specific enforcement mechanism, and if you're going to point to a violation of the Air Carrier Access Act, a specific provision that requires you to provide a wheelchair, and there's a violation of that, the Air Carrier Access Act specifically tells you what the remedial and enforcement schemes are. Which means for sure that there's... It could be because they thought that's all you should get, or it could be because they assumed that the damages aspects would be under state law because the FAA seems to say that. The FAA seems to say that through its savings clause. The question is, does the savings clause that was enacted 28 years before this particular statute, which itself was a vestige of a much earlier statute, why would that have any application to this statute? What you're saying makes sense insofar as there would not be a direct private right of action. That seems clear to me at least, that under the ACAA you couldn't just come in to federal court and say, I demand damages because you violated this. But that's not exactly what's happening here. It's a standard of behavior, a standard of care, for a state law claim. And I guess I'm not sure why the FAA generic statutory saving of that would not apply. Well, because all of these have been enacted as standalone statutes. The General Aviation Revitalization Act, the Airline Deregulation Act of 1978, the Air Carrier Access Act of 1986, all have gotten into the Federal Aviation Act as various amendments. But there's no indication that the remedies savings provision that was part of the original 1958 act is still viable. In your view, is the Ellis-Ade Act, was it wrong to sign the Ellis-Ade case in the third circuit? Well, in my view, the Ellis-Ade case with respect to the Air Carrier Access Act is an opposite. Because it's the opposite of this case. There was no allegation that there was a breach of any provision of the Air Carrier Access Act. So is your position then, it's not failed preemption then? Because if there were failed preemption, it would apply to Ellis-Ade. In other words, what are you saying exactly is preempted, substantively? I think substantively, at the bare minimum, the narrow field of an airline's duty to provide wheelchairs and wheelchair assistance to its customers. Well, why is that? I mean, there's all kinds of other stuff in the ACAE regulations. Well, and that may also be preempted. But I'm dealing with the field with which we were presented. That field appears to be pervasively regulated. What if they gave you a wheelchair that was broken and you fell and it broke your hip? Okay, so that is a different case, a harder case. But my answer would be that there you would say, okay, perhaps there was a duty breached under the Air Carrier Access Act. Then we look at whether there are any state law remedies that were preserved for the federal violation. I've suggested I don't know that the Federal Aviation Act of 1958 would provide that. But let's say it did. Then you go to the next step, what did the 1958 Savings Clause save? And it saved rights and remedies that were available at the time it was enacted. Which brings us full circle to we're dealing here. That can't be right. I mean, it can't be right in the small sense. I mean, the fact that California law changes in the meanwhile, it's not preserved. It's only preserved if it existed in 1958. Well, that's what it says or said until it was amended without substantive change. Well, in 1958 there were plenty of remedies. What is the wording of it? What is the wording exactly? Well, the wording was nothing contained in this act in any way, shall in any way abridge or alter the remedies now existing at common law or by statute. Remedies now existing, i.e. a negligence cause of action. Not the particulars of the negligence cause of action. If California has changed the rules of comparative negligence, they're going to apply the 1958 rules of comparative negligence. Well, I think, but then there's still the question of what gives rise to the negligence claim. And it's a duty, breach of a duty that is mandated only because the ACAA says it's there. There's no common law duty to give wheelchairs. Well, in that case you may win as a matter of California law, which is what I was trying to say before. But that's a different question. You can go into the California court and say there is no such duty under California law, but we're not there yet. But another approach would be that the airlines provide wheelchairs and the facilities for bringing disabled people on wheelchairs and when they sell the tickets they ask if people need wheelchairs and they hold themselves out of providing wheelchairs for customers. Your Honor, with respect, they're not allowed to ask if you need a wheelchair. That would be itself a violation. They do it all the time. Well. Do it all the time. You know, I'm getting older. I get off planes. I have a cane. First question they ask me is, would you like a wheelchair? Every time. Every time. So, you know, they hold themselves out as providing that service. And they ask you that when you order a ticket, if you can ever get to someone to talk to on the phone. I've experienced that problem myself. Not having to push 150 buttons and then you'll get some nice person. But they ask you that. And if you get a senior ticket, they'll ask you that. They do that. What are the numbers of the regulations that deal specifically with that? You're getting close with that beard, you know. They're going to be asking you that too. I'm surprised that they would ask you because truly. Oh, and they do it all the time. The idea behind the Air Carrier Access Act is obviously to provide assistance to be helpful and make air travel accessible, but also not to presume that simply because you're an older person or disabled in some manner that you would want assistance. And it's in that spirit that it's enacted. And that gets to the conflict preemption point. They don't talk about conflict preemption. They offer that as a service. They offer that as a service. Well, but that doesn't address the conflict preemption issue. But with respect to Judge Berzon's. They hold themselves out as doing it. Because the Air Carrier Access Act requires them to do it. I don't know why they do it. Well, they don't do it because there's a California common law duty that says do it. Well, then you'll win in conflict over that. I mean, you'll win under California law. Because there won't be a duty. But they're saying the duty. Well, they're saying that. We're borrowing it. They're saying that. That's a different question. I mean, it seems to me that the question before us now is if there is a California cause of action such as the one they're positing, is it preempted? That doesn't say there is a California cause of action such as the one they're positing. It just says if there is one, is it preempted? But there may not be one. That question isn't here yet. Only the preemption question is here. Right. Because that's what the district court held. Right. The district court also held that it was conflict preempted. And why is it conflict preempted? It's conflict preempted because I went back to the page to cite, Your Honor, the regulations, which are 382, 91, and 95. I'm sorry. So the conflict preemption analysis focuses on the object of the law and the method Congress chose to effectuate the objective. And here, clearly, the method sought to achieve it was this enforcement, administrative enforcement. But that's not what conflict preemption is really about, it seems to me. Conflict preemption would exist if the federal law said provide blue wheelchairs and the state law said, no, you must provide red wheelchairs, and you cannot possibly do both. That's conflict preemption. This is more of an obstacle version of conflict preemption in terms of the enforcement mechanism that was created, envisioned that the Department of Transportation would be actively involved. First of all, that it would be a speedy resolution. Well, it could be. They could be doing that simultaneously. There's nothing about this lawsuit that would prevent any of that from going forward on an administrative basis. Well, if the door were open to private damages, causes of action, and that is bringing in something like California negligence through the back door where it could never get through the front door because there's no private right of action, then people will go the litigation route, and it will diminish the administrator's ability to participate in this process, to resolve. Hear the claims. Investigate them. Resolve them. Punish the airlines when they do bad things. But the problem is, to take my hypothetical, if this person fell off a broken wheelchair, that would be all very nice, but who's going to pay for her damages? Well, that may be a harsh result. That's, again, not this case, but that's Congress's bailiwick to... But am I right in understanding that your argument would be that that would be preempted? Because you're arguing substantive field preemption such that anything about the wheelchairs is preempted. So they're saying you have to provide the wheelchairs, and any state rule about those wheelchairs, the ones that they're using in the terminals, is gone, substantively. As I said, I think that's a different case than ours, a closer question. But it depends on what your theory is. You see, that's why I have to understand your theory. Is your theory that there is... On his theory, there's not conflict preemption, which is that he's not, substantively, because he's not asking you to do anything different than the regulations say. So you have to be having a field preemption theory. Right. All right? So... And the field is what? And my field is the provision of wheelchairs and wheelchair... Right. So therefore, on my hypothetical, you can't do it. Under that hypothetical, you can't do it. Thank you. All right. So your position is that if a person accepts a wheelchair from the airline and the wheelchair is defective and it collapses and that person is injured, that that person has no remedy. Is that what you're saying? That would be my initial point. But the fallback would be that even if it were preempted, you would be able to, assuming the savings clause from the 58 Act applied, then get down to a state law remedy for violation of a right that had existed, which would be if you're going to undertake a service, you undertake it non-negligently. That's basic tort law. Right. And also we know that where there's a wrong, there's a remedy. They teach you that in law school. They did, but in this case, the remedy is the one that Congress pointed us to in the text of the Air Carrier Access Act. But just read that to me. What did Congress say? If the airline furnishes a wheelchair and the thing is defective because it hasn't been maintained and it falls off and you bust your head and, you know, you're paralyzed. What does it say? It didn't say that they did provide it or that they didn't provide it. So we are dealing with inferences. The inference from the fact that they created this elaborate mechanism for enforcement has led a number of courts to conclude that. Who created this elaborate mechanism? The regulators who were mandated to do so under the Act itself. And who helped draft those regulations? I suspect they were drafted by the regulators in consultation and through a notice and rulemaking process, which involved comments from disability advocates, comments from airline interests. Thank you. Real brief. If you look at the history of the FAA, on July 5, 1994, Public Law 103-272 was signed by President Clinton. If you look at that statute that was passed, in the statute itself, you have 40120. A remedy under this part is in addition to any other remedies provided by law. The exact same statute in the statute itself, 41112. The policy or plan must be sufficient to pay for bodily injury to or death of an individual or for loss of or damages to property of others resulting from the operations or maintenance of the aircraft under the certificate. When Congress passed the law, the statute, the statute controls over whatever the regulators say. But when they passed the law, they intended a private tort theory of recovery. Does it talk about personal injury? It says that they have to have insurance to cover bodily injury to. That's what the FAA says in the entire statute. When you go read the entire FAA statute that was signed into law on July 5, 1994, the same statute that we are talking about, the ACAA, these two sections were contained therein. As such, what United is asking us here today is that because Congress didn't go in every single statute, every single section of the FAA bill, they didn't put in this little word that you're allowed to bring tort causes of remedy, that tort remedies don't apply. It's asinine. Look at the beginning of the bill. The bill says everything in here, you have to have insurance. Everything in here, state – all remedies are still available. We're not getting rid of any remedies. Tort causes of remedies have been around longer than this country has been around. This basic negligence has been around long before airplanes were in existence, and Congress did not intend to deprive Michelle Gilstrap of any rights that she had to recover for injuries as a result of the actions of United Airlines. And with that, my time has expired. Thank you.
judges: Pregerson, Graber, Berzon